UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDINAR BUFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-02125-TAB-SEB |
| ) | |
| CUSHMAN & WAKEFIELD U.S., INC., ) | |
| CASTLETON PARK INDIANAPOLIS, LP, ) | |
| CASTLETON PARK INDIANAPOLIS ) | |
| MANAGEMENT, LLC, ) | |
| CORPORATE CLEANING SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| CASTLETON PARK INDIANAPOLIS, LP, et al ) | |
| ) | |
| Cross Claimants, ) | |
| ) | |
| v. ) | |
| ) | |
| CORPORATE CLEANING SYSTEMS, INC., ) | |
| ) | |
| Cross Defendant. ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DEFENDANTS' MOTION TO STRIKE**

## I. Introduction

Plaintiff Indinar Buford alleges she suffered a concussion when the cover of a paper towel dispenser unexpectedly swung open, hitting her in the head and causing her to jerk her head backward in surprise. Defendants Cushman & Wakefield U.S., Inc., Castleton Park Indianapolis, LP ("CPI"), and Castleton Park Indianapolis Management, LLC ("CPIM") move for summary judgment with respect to all claims, and separately seek to strike portions of an affidavit Buford relies on in her summary judgment response. For the reasons set forth below,

the Court grants Cushman & Wakefield, CPI, and CPIM's motion for summary judgment [Filing No. 85] and denies Cushman & Wakefield's motion to strike as moot. [Filing No. 92.][1]

## II.   Background

The basis for Buford's suit is an alleged incident on July 22, 2015, at 5920 Castleway West Drive. Buford worked in that building, which has a common area restroom shared by Buford's employer and two other companies that rent space in the building. At around 6 p.m., Buford used this restroom, washed her hands, and then went to the paper towel dispenser. Buford alleges that she reached for a paper towel with both hands, leaning slightly forward. She claims that when she pulled out a paper towel, the cover on the dispenser suddenly swung forward and hit her in the head above her left temple. Buford says the sudden surprise caused her to jerk her head backward in a futile attempt to avoid the impact. No one else was in the restroom when it happened. Buford asserts the incident gave her a concussion, and that she still has post-concussion syndrome.

Buford claims to have experienced a labyrinthine concussion with vestibular symptoms, i.e., a concussion in the inner ear causing vertigo, dizziness, imbalance, and changes in vision, hearing, and cognition. She also alleges that her post-concussion syndrome caused a later fall that injured her shoulder. Buford sought treatment a few days after the July 22 incident. Roughly a year later, Buford began seeing Kuimil Mohan, MD, for treatment. Dr. Mohan is an experienced, board-certified neurologist, and he diagnosed Buford with a labyrinthine

---

[1] Buford agrees that CPI and CPIM are not liable for her alleged injury. In fact, Buford sent CPI and CPIM a stipulation of dismissal with respect to her claims against them. CPI and CPIM did not execute the stipulation, and instead have asked the Court to enter summary judgment in their favor. The Court does so in this order. Defendant Corporate Cleaning Systems, Inc. ("CCS") did not join in these motions. Therefore, Buford's claims against CCS survive, though the Court questions Buford's ability to maintain her claims in light of the discussion below. Cushman & Wakefield's cross claim against CCS for indemnity, including attorney fees, likewise survives.

concussion and post-concussion syndrome, including vestibular ocular reflex disorder, post-concussion headache, and vertigo.  Buford continues to treat with Dr. Mohan.

CPI owns the building where the incident happened, but neither CPI nor its management entity, CPIM, have a representative with a day-to-day presence there.  Rather, Cushman & Wakefield manages the building and is responsible for maintenance and repairs, including the restroom where the incident occurred.[2]  Cushman & Wakefield employs building engineers to do daily walkthroughs of its buildings.  However, Cushman & Wakefield does not require its building engineers to perform walkthroughs of common area restrooms, including the one where the incident allegedly happened.  On the day of the incident, a male building engineer was assigned to the building, and he was not supposed to enter the female restroom absent a report of a maintenance or repair issue.  Cushman & Wakefield contracted with CCS to provide janitorial services for the common area bathrooms, including daily restocking of the paper towel dispenser at issue.  Both CCS and Cushman & Wakefield's building engineer's supervisor have a key to open the dispenser.

## III. Discussion

Cushman & Wakefield, CPI, and CPIM move for summary judgment,[3] arguing that Buford lacks sufficient evidence of knowledge and causation to get this case before a jury.  Cushman & Wakefield first argues Buford fails to show any facts that would charge it with actual or constructive knowledge of any danger posed by the dispenser.  Without showing such

---

[2] Technically, at the time of the incident, Cassidy Turley Commercial Real Estate Services, Inc. d/b/a DTZ managed the building, but it has since changed its name to Cushman & Wakefield, and the name change is immaterial to this suit.

[3] Although CPI and CPIM also have moved for summary judgment, Buford has agreed to dismiss her claims against CPI and CPIM.  Therefore, for ease of reference, in its discussion the Court refers only to Cushman & Wakefield as the moving party.

knowledge, Cushman & Wakefield contends, Buford cannot satisfy one of the essential elements necessary to prove her claim. Buford responds that a jury could reasonably find that Cushman & Wakefield failed to exercise reasonable care.

Cushman & Wakefield next argues that Buford cannot show the incident proximately caused her alleged injuries because the impact from the dispenser cover could not have caused her to have a concussion. Cushman & Wakefield relies on its expert's affidavit and report and moves to strike portions of Dr. Mohan's expert affidavit that concern causation. Buford responds that Dr. Mohan can properly offer an opinion regarding causation, which creates a disputed fact for the jury to resolve.

### a. Actual or Constructive Knowledge

Under Indiana law,[4] the elements of negligence are: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014) (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011)). "It is well settled that absent a duty, there can be no breach. And whether a duty exists is a question of law for the court to decide." *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016) (internal citation omitted). With regard to premises liability, Indiana determines the duty owed by a possessor of land by classifying entrants onto land as invitees, licensees, or trespassers, *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991), and by looking to whether a condition or an activity on the land caused the risk. *Rogers*, 63 N.E.3d at 321–22.

---

[4] The Court applies Indiana substantive law because the Court hears this case under its diversity jurisdiction. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

The parties agree that Buford was an invitee and that the incident involved a condition on the land. Accordingly, Section 343 of the Restatement (Second) of Torts applies and provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

*Rogers*, 63 N.E.3d at 322 (citing *Burrell*, 569 N.E.2d at 639–40; Restatement (Second) of Torts § 343). Some Indiana courts have used a broad interpretation of the knowledge element based on *Burrell v. Meads*, 569 N.E.2d 637 (Ind. 1991), but the Indiana Supreme Court clarified in *Rogers* that the "best definition" is the language from the Restatement. *Rogers*, 63 N.E.3d at 322–23. Thus, a possessor of land is only liable to an invitee for a dangerous condition if it "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to . . . invitees." *Id.* at 322 (quoting Restatement (Second) of Torts § 343).

Cushman & Wakefield argues that Buford failed to show any evidence that it had actual or constructive knowledge of any danger posed by the paper towel dispenser. The Supreme Court has made clear that Rule 56 "mandates the entry of summary judgement . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

5

Cushman & Wakefield points to Viki Hamblen's uncontroverted affidavit that Cushman & Wakefield had no actual knowledge of any danger, and Buford admits she "has discovered no evidence that the paper towel dispenser was either reported or was actually defective" on the day of the incident. [Filing No. 91, at ECF p. 7.] The issue, then, is whether Cushman & Wakefield had constructive knowledge that the paper towel dispenser cover was in a dangerous condition.

Buford fails to cite any evidence that would indicate Cushman & Wakefield had constructive knowledge of any danger posed by the paper towel dispenser cover. In order to show constructive knowledge, "a plaintiff must show a condition [that] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the [defendant] had used ordinary care." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018) (internal quotation marks omitted) (quoting *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. App. 2012)). In analogous slip-and-fall cases, plaintiffs must present evidence of how long any alleged hazard existed in order to establish that the defendant should have known of the alleged dangerous condition. *Id.* at 1088–89 (affirming summary judgment because the plaintiff failed to provide any evidence of how long the alleged hazard existed). Buford fails to provide any evidence of how long the dispenser cover was in an allegedly dangerous condition, and thus fails to show a genuine dispute as to whether Cushman & Wakefield had constructive knowledge.

Buford argues that she merely needs to show "that a *knowable* dangerous condition" existed. [Filing No. 91, at ECF p. 6 (emphasis added).] There are two problems with Buford's assertion. First, she cites *F.W. Woolworth Co. v. Moore*, 48 N.E.2d 644, 646 (Ind. 1943) as the source of this standard. [Filing No. 91, at ECF p. 6.] However, *F.W. Woolworth* does not announce any such standard. Rather, the Indiana Supreme Court noted that, by the store

manager's own testimony, the allegedly dangerous condition existed for at least a year prior to the incident, making the defendants "chargeable with notice of it." *F.W. Woolworth*, 48 N.E.2d at 646. As opposed to a lax standard, *F.W. Woolworth* confirms that actual or constructive knowledge is necessary for a plaintiff to make her case. *See id.*

Second, Buford relies on this erroneous standard to argue that "[a] jury could reasonably conclude that if [Cushman & Wakefield's] building engineer would have exercised reasonable care and inspected the women's restroom, he would have discovered the unsafe condition." [Filing No. 91, at ECF p. 6.] Because this argument relies on the wrong standard, it is fundamentally flawed, and the Court rejects it.[5] Even if the Court were to consider this argument, it asks the Court to permit the jury to assume that the dispenser cover was in an unsafe condition for such a long time that it was unreasonable for Cushman & Wakefield to have not noticed it via a walkthrough by the building engineer. Without the anchor point of when the dispenser allegedly became unsafe, all the jury could ever do is guess that it was unsafe and a walkthrough would have caught it. In short, based on the evidence before the Court, a jury could not reasonably conclude Cushman & Wakefield should have known the dispenser was in an unreasonably dangerous condition.

Applying Mississippi law, a district court rejected a similar argument in *Pickle v. Wal-Mart Stores, Inc.*, 1:08-cv-251-GHD-JAD, 2009 WL 4666012, at *5 (N.D. Miss. Dec. 7,

---

[5] Buford also relies on Indiana's summary judgment standard. [Filing No. 91, at ECF pp. 4–5.] However, the applicable federal standard differs from Indiana's, which requires a defendant moving for summary judgment to affirmatively disprove an element of the plaintiff's case. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 n.1 (7th Cir. 2018); *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994) ("In this respect, Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice."). The moving party in federal court need not present any evidence concerning the non-movant's claim, and may be successful in its motion by instead showing the absence of evidence to support the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

2009), *aff'd*, 384 Fed. App'x 428 (5th Cir. 2010). The facts and law in *Pickle* are notably similar, making the case exceptionally persuasive. Similar to Buford, the plaintiff in *Pickle* claimed she was injured when she went to pull toilet paper out of a dispenser, and the dispenser cover fell on her. *Id.* at *1. Like Buford, the plaintiff failed to offer any evidence of how long the dispenser cover had been in the allegedly dangerous condition. *Id.* at *4–5. Like the paper towel dispenser at issue in this case, the toilet paper dispenser required a key to be unlocked and only certain employees had a key.[6] *Id.* at *4. Like Indiana, Mississippi follows Restatement (Second) of Torts § 343 regarding a possessor's duty of care to an invitee regarding conditions on the land. *Lumbley v. Ten Point Co., Inc.*, 556 So. 2d 1026, 1031 (Miss. 1989). And like the above discussion of Indiana law, Mississippi law requires the plaintiff to "prove that the condition existed for such a length of time that, in the exercise of reasonable care, the [defendant] should have known of the condition." *Pickle*, 2009 WL 4666012, at *5. The *Pickle* court found "that even indulging every inference from the facts in favor of [the plaintiff], the circumstantial evidence is not of adequate probative value" to show the defendant was or should have been aware of the allegedly dangerous condition. *Id.* at *5–6. Like *Pickle*, this Court finds Buford wholly lacks evidence to prove a necessary element of her claim.

Buford next makes an undeveloped argument that she can satisfy the knowledge requirement by showing Cushman & Wakefield caused the allegedly dangerous condition through its own negligence. But again, Buford fails to provide sufficient evidence. Buford points out that the dispenser was functional before and after the incident, and only Cushman & Wakefield and CCS had a key to unlock and open the dispenser. Buford asserts that "[a] jury

---

[6] But only the defendant's employees had keys in *Pickel*, *id.* at *4, whereas in this case, both CCS and Cushman & Wakefield's building engineer's manager had keys.

could infer from these facts that [Cushman & Wakefield] . . . used its key to unlock the dispenser and negligently failed to lock it back." [Filing No. 91, at ECF p. 7.] Though reminiscent of *Summers v. Tice*,[7] Buford's argument is unpersuasive. Buford does not cite any evidence from either Cushman & Wakefield or CCS regarding who last serviced the bathroom before the incident or who last locked or unlocked the dispenser. Buford designates some of Cushman & Wakefield's answers to her interrogatories and requests for admission regarding possession of the key, but none of the questions concern who was the last to use their key to open the dispenser before the incident. [Filing Nos. 91-1, 91-3, 91-5.] Further, Buford fails to cite any evidence that Cushman & Wakefield had ever opened, closed, locked, or unlocked the dispenser any time before or after the incident. In the absence of these facts, she asks the Court to permit the jury to assume not only that the dispenser opened on Buford because it was improperly locked, but also that it was in fact Cushman & Wakefield who failed to lock it. Such unsupported speculation cannot be used to get this claim before a jury.

For these reasons, the Court grants Defendants' motion for summary judgment [Filing No. 85] on the ground that Buford has failed to come forward with evidence such that a reasonable juror could find Cushman & Wakefield knew or constructively knew of an unreasonable risk of harm posed to Buford by the paper towel dispenser cover.

   b. **Causation**

While the Court's analysis could end here, in the interest of completeness, the Court gives some consideration to Cushman & Wakefield's additional argument that Buford lacks any evidence to show the incident caused her injuries. Cushman & Wakefield is entitled to summary

---

[7] In *Summers v. Tice*, 199 P.2d 1, 4 (Cal. 1948), the California Supreme Court held that when a plaintiff cannot identify which among multiple joint and severally liable defendants caused the harm, the burden shifts to each defendant to show they did not cause the plaintiff's injury.

judgment if Buford fails to provide any evidence that would show Cushman & Wakefield proximately caused her alleged injury. As noted above, the three essential elements of negligence in Indiana include "an injury proximately caused by the breach of duty." *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014) (quoting *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011)); *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 998 (7th Cir. 2016) ("Proximate cause is an essential element of a negligence action"). And "the defendant in a negligence action is entitled to judgment as a matter of law when 'there is a total absence of evidence or reasonable inferences on at least one essential element of the plaintiff's case.'" *Carson*, 811 F.3d at 998 (quoting *Palace B., Inc. v. Fearnot*, 381 N.E.2d 858, 861 (Ind. 1978)).

Cushman & Wakefield points to the affidavit of Steve Rundell, Ph.D., which says the impact from the falling dispenser cover could not have caused Buford to have a concussion. [Filing No. 87-5, at ECF pp. 2–3.] Buford responds by pointing to Dr. Mohan's affidavit, in which Dr. Mohan opines that the combination of the impact and Buford suddenly jerking her head back, not only could have caused, but is the most likely cause of Buford's symptoms. [Filing No. 91-4, at ECF pp. 2–3.] In a separate motion, Cushman & Wakefield seeks to strike Dr. Mohan's opinion regarding causation, arguing that it is unreliable. [Filing No. 92.] Cushman & Wakefield contends that without Dr. Mohan's opinion, Buford cannot show causation, so her claim must fail.

Federal Rule of Evidence 702 sets the standard for admissibility for an expert opinion. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[Q]ualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (alterations in original) (quoting *Clark v. Takata Corp.,* 192 F.3d 750, 759 n.5 (7th Cir.1999)).

In determining the admissibility of offered expert testimony, the Court functions as a gatekeeper with respect to the expert's qualifications and methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)). If the expert is qualified, the critical point is whether the expert used proper methodology. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000). "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." *Smith*, 215 F.3d at 718 (citing *Daubert*, 509 U.S. at 595). Further, "[t]he question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine" following cross examination. *Id.* at 719 (citing *Walker*, 208 F.3d at 589–90).

Irrespective whether it is correct or properly supported, Dr. Mohan's affidavit follows simple logic: (a) Buford has certain symptoms; (b) these symptoms can be caused by a labyrinthine concussion and post-concussion syndrome; (c) a labyrinthine concussion and post-concussion syndrome can be caused by "trauma to the left temple area and/or sudden jerking of the head and neck in an effort to avoid head trauma"; (d) Buford's description of the incident and

11

her symptoms are consistent with suffering a labyrinthine concussion and post-concussion syndrome; (e) Dr. Mohan had "no indication through [his] medical evaluation or discussions with Ms. Buford that another incident is responsible for her symptoms"; and therefore, (f) the incident is the most likely cause of Buford's symptoms. [Filing No. 104-1, at ECF pp. 1–3.]

Thus, Dr. Mohan's affidavit has two relevant causation conclusions: first, that the incident as described by Buford could have caused her symptoms, and second, that the incident is the most likely cause of Buford's symptoms. Cushman & Wakefield argues that Dr. Mohan lacks a sufficient basis to offer either of these causation opinions.

Buford shows that Dr. Mohan's opinion that the incident could have caused her symptoms is sufficiently reliable. Cushman & Wakefield argues Dr. Mohan lacked sufficient information about the dispenser to be able to say whether the impact from the dispenser could have caused a concussion. Cushman & Wakefield juxtaposes the fact that Dr. Mohan merely had a picture of the dispenser with the analyses Dr. Rundell conducted, and Dr. Rundell's finding that the impact could not have caused a concussion.[8] However, Buford does not argue that the impact from the dispenser alone caused her injury; rather, she emphasizes that it was the combination of the impact and jerking her head back in surprise. Dr. Mohan's analysis includes

---

[8] Buford's response regarding Dr. Rundell's report is problematic. According to his report, Dr. Rundell created three dimensional computer models of the bathroom where the incident took place, the dispenser, and Buford, noting precise measurements and positioning based on Buford's deposition, a scan of the bathroom, and the dispenser's specifications. [Filing No. 104-2, at ECF pp. 4, 6–7.] Using these models, Dr. Rundell claims to have recreated the conditions of the incident, and states that the impact of the falling cover could not have caused Buford to have a concussion. [Id. at 14, 18.] Inexplicably, Buford seizes on a single paragraph on page 19 of the 21-page report, in which Dr. Rundell claimed he volunteered to have the cover impact his head in the same manner as Buford described while wearing an accelerometer to measure the impact. [Id. at 19.] Despite the *de minimus* nature of this paragraph and test, Buford represents—on five occasions in her brief—that this is the only test Dr. Rundell did. [Filing No. 104, at ECF pp. 7–9.] This representation is inaccurate.

this additional causal element, and he expressly points to *UptoDate* chapter *Pathology, Etiology, and Differential Diagnosis of Vertigo*, which explains that a labyrinthine concussion "may also occur with abrupt changes of head motion not necessarily associated with impact." [Filing No. 104-1, at ECF p. 1 (referencing Filing No. 104-4, at ECF p. 2).] Therefore, Dr. Mohan's conclusion that the incident could have caused Buford to have a labyrinthine concussion is sufficiently reliable under *Daubert*.

On the other hand, Dr. Mohan's opinion that the incident is the most likely cause of Buford's symptoms is more troubling under *Daubert*. Cushman & Wakefield argues there is a difference between diagnosing an injury and determining the cause of it. Cushman & Wakefield contends Dr. Mohan's second causation opinion is unreliable because he took Buford's word for it that nothing happened before or after the incident that could be the cause of her symptoms. Cushman & Wakefield emphasizes that Dr. Mohan did not review many of Buford's medical records, including records that contain complaints of similar symptoms pre-dating the incident, suggesting the incident was not the cause of Buford's symptoms. Buford responds that Dr. Mohan properly relied on Buford's self-reported history, and that doctors regularly determine the cause of an injury while making a diagnosis.

Physicians are entitled to "rel[y] upon a patient's self-reported history," and the Court "should allow [any] inaccuracies in that history to be explored through cross-examination." *Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). However, the Seventh Circuit recognizes the difference between diagnosis and etiology—i.e. causation. *Myers v. Ill. C.R. Co.*, 629 F.3d 639, 644–45 (7th Cir. 2010). Differential etiology is a method for determining causation where "the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what

13

is the likely cause of the ailment." *Id.* at 644. When the cause of the injury at issue is not obvious, failure to rule in and then rule out other potential causes means the physician's opinion "is properly characterized as a hunch or an informed guess. And 'the courtroom is not the place for scientific guesswork, even of the inspired sort.'" *Id.* at 645 (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).

The Court declines to further address Cushman & Wakefield's arguments on causation. As set forth above, Cushman & Wakefield's summary judgment motion prevails for separate, unrelated reasons. It serves no purpose to further elaborate on whether portions of Dr. Mohan's affidavit should be stricken, or whether instead Dr. Mohan's opinions are fully admissible but would have been subject to vigorous cross examination had this case gone to trial. For reasons already set forth, there will be no trial against Cushman & Wakefield, CPI, and CPIM, so further discussion on this point would be purely academic.

## IV. Conclusion

For the reasons above, the Court grants Cushman & Wakefield, CPI, and CPIM's motion for summary judgment. [Filing No. 85.] Buford concedes her claims against CPI and CPIM, and Buford fails to show evidence that could lead a jury to conclude Cushman & Wakefield had constructive knowledge that the paper towel dispenser cover posed an unreasonable risk to Buford. The Court denies as moot Cushman & Wakefield's motion to strike. [Filing No. 92.]

Finally, the Court notes that Buford's claims against CCS survive, as does Cushman & Wakefield's cross claim against CCS. Given the approaching January 15, 2019, trial, the parties shall, by November 16, 2018, file a joint statement addressing: (1) whether in light of this ruling Buford is continuing to assert any claim against CCS, and if so, the basis for that claim; and (2)

14

whether Cushman & Wakefield intends to pursue any claim for indemnity against CCS, and if so, the basis for that claim.

No judgment shall issue at this time.

Date: 11/9/2018

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.